IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NEIL GIESE<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 3:19-CV-00081 |
| MARCUS GALLEGOS, et al.,<br>    *Defendants*. | §<br>§<br>§ | |

**DEFENDANTS JACKSON, THOMAS, GALLEGOS, AND WOLFE'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendants Juan Jackson, James Thomas, Marcus Gallegos, and George Wolfe, by and through the Office of the Attorney General for the State of Texas, who files this Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asking the Court to dismiss Plaintiff Neil Giese's claims against them. In support thereof, Defendants respectfully submits the following:

**I.
STATEMENT OF THE CASE**

Plaintiff Neil Giese ("Giese"), TDCJ #905908, is an inmate presently confined in the Texas Department of Criminal Justice (TDCJ) at the Ramsey Unit, in Rosharon, Texas. On February 25, 2019, Giese filed suit pursuant to 42 U.S.C.A. § 1983, specifically alleging that Defendants Virgil McMullen, Juan Jackson, James Thomas, Marcus Gallegos, and George Wolfe engaged in a conspiracy to retaliate against Giese for his use of the prison grievance system. ECF No. 24. Giese sues all Defendants in only their individual capacities. *Id.* Giese is seeking compensatory, nominal, and punitive damages, as well as attorney fees. *Id.*

**II.
MOTION FOR SUMMARY JUDGMENT**

1

Defendants assert there are no genuine issues of material fact for trial and requests that the Court grant summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56(b) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In support of his motion, Defendants Juan Jackson, James Thomas, Marcus Gallegos, and George Wolfe submit the following:

**Exhibit A:** Deposition Transcript of Warden Virgil McMullen;

**Exhibit B:** Affidavit of Deputy Director Billy Hirsch [Bates Nos. 001-002];

**Exhibit C:** Texas Department of Criminal Justice Office of the Inspector General Report No. 1800006130, with supporting business records affidavit [Bates Nos. 001-115];

**Exhibit D:** Texas Department of Criminal Justice Grievance Records related to Offender Neil Giese, TDCJ No. 00905908, with supporting business records affidavit [Bates Nos. 001-433];

**Exhibit E:** Emails from Clarissa Smith, TDCJ Ramsey Unit Administrative Assistant, dated May 31, 2018 [Bates Nos. 001-004];

**Exhibit F:** Deposition Transcript of Juan Jackson, Jr.;

**Exhibit G:** Deposition Transcript of Marcus Gallegos

## A. STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are not in dispute or are not reasonably susceptible to dispute.[1]

At all times relevant to Giese's complaint, Defendant McMullen was employed as a Senior Warden by TDCJ, an agency of the State of Texas, and acting within his scope of employment.

At all times relevant to Giese's complaint, Defendant Jackson was employed as a Major of Correctional Officers by TDCJ, an agency of the State of Texas, and acting within his scope of employment.

---

[1] Defendants concede these facts for the purpose of this Motion for Summary Judgment. Undisputed facts should not be considered admissions for the purpose of trial.

At all times relevant to Giese's complaint, Defendant Thomas was employed as a Lieutenant of Correctional Officers by TDCJ, an agency of the State of Texas, and acting within his scope of employment.

At all times relevant to Giese's complaint, Defendant Gallegos was employed as a Sergeant of Correctional Officers by TDCJ, an agency of the State of Texas, and acting within his scope of employment.

At all times relevant to Giese's complaint, Defendant Wolfe was employed as a Correctional Officer by TDCJ, an agency of the State of Texas, and acting within his scope of employment.

At all times relevant to Giese's complaint, Giese was an offender housed in TDCJ.

On May 2, 2018, while at the Ramsey Unit, Defendant Wolfe planted two screw drivers in Giese's cell. ECF No 24 at 3; **Exhibit C** at 019. Defendants Gallegos, Jackson, and Thomas prompted Defendant Wolfe to, and assisted in, planting the screw drivers in Giese's cell. *Id.* Subsequently, Giese was written a disciplinary case for possession of contraband. *Id.* at 4; **Exhibit C** at 110.

On May 8, 2018, the disciplinary charges brought against Giese as a result of his "possession" of the two screw drivers were dismissed by Defendant McMullen. **Exhibit C** at 110; **Exhibit A** at 50:19─51:8. On May 31, 2018, Giese was transferred to the Stringfellow Unit. *Id.* at 5; **Exhibit B**.

B. **LEGAL ISSUES**

   i. **Whether Defendants Juan Jackson, James Thomas, Marcus Gallegos, and George Wolfe retaliated against Giese.**

   ii. **Whether Defendants Juan Jackson, James Thomas, Marcus Gallegos, and George Wolfe engaged in a conspiracy to deprive Giese of a constitutionally protected right.**

   iii. **Whether Defendants are entitled to qualified immunity.**

   iv. **Whether Giese has alleged a sufficient injury under the PLRA.**

### C. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure. These motions permit the court to resolve lawsuits without the necessity of trial if there is no *genuine* dispute as to any facts which are material and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir. 1991); *Lodge Hall Music, Inc. v. Waco Wranglery Club, Inc.*, 831 F.2d 77, 79 (5th Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(e), Federal Rules of Civil Procedure.

Thus, when a motion for summary judgment is filed and is accompanied by competent supporting evidence, a court may grant the motion if the opposing party fails to present controverting evidence. Rule 56(e) only requires the summary judgment nonmovant to submit affidavits and other summary judgment proof when the original motion is supported by proper affidavits or other summary judgment proof. *See E.E.O.C. v. Brown & Root, Inc.*, 688 F.2d 338, 341 n.2 (5th Cir. 1982); *see also Orthopedic & Sports Injury Clinic v. Wang*, 922 F.2d 220, 225 (5th Cir. 1991), (holding that unsupported affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment). Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *cert denied*, 506 U.S. 973 (1992); *Hans v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Federal summary judgment procedure requires

4

the court to "pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim." *Tacon Mechanical Contractors v. Aetna Casualty and Surety Company*, 65 F.3d 486, 488 (5th Cir. 1995).

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact materials to resolution of the motion. *Celotex Corp.v. Catrett*, 477 U.S. 317, 325, (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, they need not negate the essential elements of the nonmovants's case. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex Corp. v. Catrett*, 477 U.S. at 323. In order for the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-250; *Matsushita Electrical Industrial Co. Ltd., v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. at 325; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). A summary judgment movant who will not bear the burden of proof at trial may meet its initial burden of establishing that there is no genuine issue of material fact merely by pointing out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Transamerica Ins. Co. v. Avenall*, 66 F.3d 715, 718-719 (5th Cir. 1995).

Once the moving party has carried that burden, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996); *Stults v. Conoco, Inc.*, 76 F.3d at 656. The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. at 324; *Stults v. Conoco, Inc.*, 76 F.3d at 656; *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The party opposing a motion supported by evidence cannot discharge its burden by alleging mere legal conclusions; instead, it must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-55; *Matushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. at 586. Nonmovants are required to identify the specific evidence in the record and to articulate the precise manner in which that evidence supports their claim. *Stults v. Connoco, Inc.*, 76 F.3d at 656; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied sub nom, Forsyth v. Vines*, 513 U.S. 871 (1994). The Court cannot assume, in the absence of any proof, that the nonmoving party could or would prove the necessary facts. *McCallum Highlands v. Washington Capital DUS, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995); *and Little v. Liquid Air Corporation*, 37 F.3d at 1075.

Where, as here, the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him. *Celotex v. Catrett*, 477 U.S. at 322-24; *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992); *Fontenot v. Upjohn Co.*, 78 F.2d 1190, 1194-95 (5th Cir. 1986).

D.  **ARGUMENTS & AUTHORITIES**

    i.  **Giese fails to establish that Defendants engaged in retaliation.**

It is well settled that a prison official may not retaliate against an inmate for complaining about prison conditions or staff misconduct. *Ruiz v. Estelle,* 679 F.2d 1115, 1153 (5th Cir.), *opinion amended in part and vacated in part,* 688 F.2d 266 (1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997) (*citing Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). Specific facts must be alleged in order to sustain a retaliation claim; conclusory allegations are not sufficient. *Coleman v. Harris,* 296 F.App'x 428, 2008 U.S. App. LEXIS 22023, 2008 WL 4649122 (5th Cir., October 21, 2008); *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Retaliation against a prisoner is actionable only if it is "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).

With regard to claims of retaliation revolving around prison disciplinary proceedings, as is the case here, the Fifth Circuit has explained as follows:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

7

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. This places a significant burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate.

*Woods v. Smith*, 60 F.3d at 1166 (internal citations omitted).

### a. Defendants did not have any intent to retaliate against Giese.

Giese alleges that he and his mother filed grievances pertaining to his medical treatment prior to Defendant Wolfe planting the screwdrivers in his cell. ECF No. 24 at 2. However, his conclusory allegations that he was retaliated against for those grievances are wholly insufficient to show causation. The Fifth Circuit has held an allegation that "harassment of the plaintiff intensified after he started filing grievances" is insufficient to show retaliation. *Reese v. Skinner*, 322 F.App'x 381, 383 (5th Cir. 2009). Retaliatory intent requires that the offender show the defendant's intent to retaliate based on the offender's exercise of his constitutional rights. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).

To the extent that Giese's grievances could provide the basis for a retaliation claim, there is no evidence to support the conclusion that Defendants were aware of any against them. *See* **Exhibit F** at 14:15─15:1; **Exhibit G** at 11:4─5, 29:11─31:4. While Defendants may have been generally aware of Giese's grievances, those were either related to Giese's complaints against medical personnel or written by Giese's mother, Sherry Templin. *See id.*; **Exhibit A** at 26:14─27:5, 28:12─30:16, 53:21─54:10. Because the standard set out in *McDonald* requires the intent to retaliate against an inmate

8

for *his or her* exercise of a specific constitutional right, the complaints written by Ms. Templin are of no importance to this analysis. 132 F.3d at 231 (emphasis added).

However, even were the Court to consider the complaints from Giese's mother, those complaints provide little support for Giese's claims. The Fifth Circuit has made clear that "secondary litigation activity" does not comprise the basis of a retaliation claim. *Johnson*, 110 F.3d at 310. Thus, Giese's previous grievances, and even his mother's complaints, against different officers and medical personnel cannot support the necessary retaliatory intent to impute liability against Defendants. *See Cain v. Herrera*, CIV.A. C-04-502, 2005 WL 3312636, at *4 (S.D. Tex. Dec. 7, 2005) ("the fact that plaintiff filed grievances about the grievance system itself and complained about other officers does not provide a motivation for either [Defendant] to retaliate against him."). Giese fails to point to a specific grievance that may have provoked a retaliatory response from Defendants, but rather he alleges that his grievances in general led to Defendants' actions. Neither this conclusory allegation, nor his grievances on other matters, and other officers or medical personnel, provide grounds showing an intent for Defendants to retaliate.

Even still, the evidence directly contradicts any retaliatory intent. The planting of the screwdrivers by Defendant Wolfe, as prompted by Defendant Jackson, was done in connection with an investigation into the introduction of K2 onto the Ramsey Unit by an unknown correctional officer, and not out of an intent to retaliate. *See* **Exhibit F** at 79:22─81:5. Further, despite Plaintiff's conclusory allegation that "[e]ach Defendant would have had the opportunity acting individually or in concert with each other to effectuate Plaintiff's transfer" from the Ramsey Unit to the Stringfellow Unit, this statement is plainly false. *See* **Exhibit F** at 36:18─25; **Exhibit G** at 48:1─49:4. Ultimately, the decision to move Giese was made by Deputy Director Hirsch "for security purposes during an investigation into Neil Giese's allegation that TDCJ officers planted a screwdriver in his cell." **Exhibit**

**B**. Therefore, Giese's claims of retaliation against Defendants are not supported by the evidence and should be dismissed.

### b. Giese did not suffer any adverse act, much less one that would deter a person of ordinary firmness.

Assuming, *arguendo*, that the Court finds retaliatory intent, some acts, though motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Retaliation against a prisoner is actionable only if the alleged adverse acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* (quoting *Crawford-El v. Britton,* 523 U.S. 574, 588 n. 10 (1998)). Bare allegations that a plaintiff's exercise of his rights was chilled or curtailed in retaliation for the exercise of protected rights, such as a claim the plaintiff "suffered great personal damage from the defendants' actions, including a violation of his First Amendment rights," is not sufficient to plead a chilling effect. *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017). Instead, it is a legal conclusion which does not show how the plaintiff reduced or changed his exercise of free speech in any way. *Id.*

To the extent that Giese alleges he was harmed by a false disciplinary charge, the Fifth Circuit has held there is no free-standing constitutional right to be free from false disciplinary charges. *Palmisano v. Bureau of Prisons*, 258 F.App'x 646 (5th Cir. 2007); *see Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). More specifically, the Fifth Circuit has stated there is no due process violation in the filing of an allegedly false disciplinary case if the prisoner is given an adequate state procedural remedy to challenge the accusations. *Grant v. Thomas*, 37 F.3d 632 (5th Cir. 1994) (citing *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984)); *see also Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (prison inmate has no constitutional right against being falsely accused of conduct which might result in deprivation of liberty interest), *cert. denied,* 485 U.S. 982 (1988). Giese has not suggested that he did not have an adequate state procedural remedy to challenge the disciplinary case, through the prison hearing

process and the grievance procedure; nor could he because the case against him was dismissed within a week of it being written, and prior to it ever reaching the hearing stage. **Exhibit A** at 50:19─51:8; **Exhibit C** at 110.

In fact, the only "harm" alleged by Giese is that he was transferred to the Stringfellow Unit in June, during the investigation conducted by the Office of the Inspector General, and housed with a "homosexual inmate whom was suffering from HIV/AIDS related symptoms." *Id.* at 5. However, as the Court is well aware, "[a] prisoner has no constitutionally protected interest in a particular facility or a specific work assignment." *Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir.1996) (per curiam). Further, the decision to transfer Giese to the Stringfellow Unit was made by Deputy Director Hirsch for "his own safety." **Exhibit B**. Once Giese was transferred to the Stringfellow Unit, Defendants no longer had any control over Giese's housing assignment. *See* **Exhibit A** at 48:18─49:4. Even if Defendants were able to control Giese's housing assignment at the Stringfellow Unit, neither homosexual inmates nor symptomatic HIV-positive inmates are segregated from other offenders. *See* **Exhibit A** at 59:17─60:9. Additionally, there is nothing to support Giese's conclusory statement that Stringfellow Unit presented "an environment that was considerably more imminently dangerous that his previous housing at the Ramsey Unit." *See* ECF No. 24 at 5; **Exhibit A** at 50:1─5.

Similarly, Giese's allegation that this transfer prevented him from pursuing his education provides no basis to support an injury. First, Giese was not enrolled in college as of May 31, 2018. **Exhibit E** at 001. Additionally, inmates have no constitutional right to participate in educational programs while in custody. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Lato v. Attorney General*, 773 F. Supp. 973, 978 (W.D. Tex. 1991) ("The United States Constitution does not mandate educational, rehabilitative, or vocational programs.").

11

Ultimately, Giese has failed to show any adverse action from Defendants. Giese has also failed to show, or even plead, that his First Amendment rights were chilled, or that he was prevented, in any way, from their further exercise. *See generally*, ECF No. 24. Following the implementation of the alleged retaliatory scheme, Giese filed grievances related to the planting of screwdrivers and ultimately initiated this lawsuit. ECF No. 1, 3, 24; **Exhibit D** at 190 ("I then called my mother, Sharon Templin, and instructed her to contact my attorney and that I was ready for whatever they (the Field Officers) threw at me because I was in the right . . . ."); **Exhibit D** at 202. Further, Giese continued to file additional grievances related to issues that are not the basis of this suit. *See generally*, **Exhibit D**. Such activity shows that any alleged "retaliation" did not prevent or otherwise chill Plaintiff from exercising his First Amendment rights. *Hill v. Gatson*, No. G-03-966, 2007 WL 869536, at *2 (S.D.Tex. Feb. 15, 2007) (holding there is no cognizable claim for retaliation where alleged retaliation did not prevent or chill plaintiff from filing grievances, and did not deter him from prosecuting his lawsuit); *Stephenson v. Dretke*, No. G-03-443, 2007 WL 1729641, at *3 (S.D.Tex. June 12, 2007) (same). Therefore, the evidence does not support Giese's claims of retaliation against Defendants and those claims should be dismissed.

### c. Giese cannot show "but-for" causation.

The Fifth Circuit has held that temporal proximity is insufficient to prove "but-for" causation. *Strong v. University HealthCare Systems, LLC.*, 482 F.3d 802, 808 (5th Cir. 2007). The mere fact one incident precedes another is not proof of a causal connection because this is the logical fallacy of post hoc, ergo propter hoc (after this, therefore because of this). *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting "the post hoc ergo propter hoc fallacy assumes causality from temporal sequence" which is a "false inference"); *Jefferson v. Endsley*, civil action no. 5:13cv18, 2015 WL 5635274 (E.D.Tex., September 24, 2015), *aff'd* 714 F.App'x 450 (5th Cir. 2018) (temporal proximity between the prison officials' learning of Jefferson's grievances and the receipt of disciplinary action almost a week later

did not show the disciplinary action was retaliatory); *see also Decker v. Dunbar*, 633 F.Supp.2d 317, 347 (E.D.Tex. 2008), aff'd 358 F.App'x 509, (5th Cir. 2009) (retaliation claim lacked merit where prisoner alleged he received "bogus disciplinary cases" within a few days after filing grievances, but prisoner filed so many grievances that "it is inevitable that whenever Decker received a disciplinary case, it would have been within a short time after he filed a grievance").

As in *Decker*, Giese points to the temporal proximity between his filing of grievances or complaints and Defendants actions resulting in the receipt of a disciplinary action, but this alone is not sufficient to show causation. The fact Giese filed complaints and then the screwdrivers were planted resulting in him receiving a disciplinary case, does not itself show a chronology from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d at 1166.

Further, the actions prompted by Defendant Jackson and carried out by Defendant Wolfe were done as part of an investigation into the introduction of K2 (synthetic marijuana) onto the Ramsey Unit by an unknown officer, not out of any retaliatory intent. **Exhibit A** at 50:6─50:12; **Exhibit F** at 30:24─32:15, 79:19─81:5. **Exhibit G** at 51:22─52:2. Therefore, the evidence does not support Giese's claims of retaliation against Defendants and those claims should be dismissed.

  **ii. Defendants are all members of the same state agency, and, therefore, are incapable of forming a conspiracy.**

Giese's allegations of a conspiracy are entirely conclusory, which is insufficient to state a claim, and are not supported by the evidence. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). Additionally, such claims are barred by the intra-corporate conspiracy doctrine, which, as applied to this case, states TDCJ and its employees constitute a single legal entity which is incapable of conspiring with itself. *Thornton v. Merchant*, 526 F.App'x 385, 388 (5th Cir. 2013); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).

In this case, each of the Defendants accused of conspiracy were employees of TDCJ at all times related to Giese's complaint. Thus, they constitute a single entity, which is incapable of

conspiring with itself. *See Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) (applying doctrine to § 1983 conspiracy claim involving police department and police officers). Even when the defendants are sued in their individual capacities, as Defendants are in this case, the premise is still true. *Collins v. Bauer*, 2012 WL 443010, *8 (N.D. Tex. 2012).

Further, a conspiracy claim is not actionable without showing an actual violation of §1983, which, as described above, is simply not present. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). Accordingly, Giese's conspiracy claims should be dismissed.

### iii. Defendants are entitled to qualified immunity

Qualified immunity is immunity from suit and not just a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, qualified immunity shields a defendant from the costs of trial and the burdens of broad-reaching discovery. *Gaines v. Davis*, 928 F.2d 705, 706 (5th Cir. 1991), *reh'g denied*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The United States Supreme Court has repeatedly stressed that qualified immunity must be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This Court has long held that qualified immunity is to be resolved on the face of the pleadings and with limited resort to pre-trial discovery. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) (citing *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990)). In fact, district courts have an obligation to carefully scrutinize a plaintiff's claims before subjecting public officials to broad-reaching discovery. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). This rule is designed to protect public officials from the burdens and costs of litigation and to prevent disruption of government responsibilities. *Harlow*, 457 U.S. at 817.

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818. The Fifth Circuit has emphasized the extent of this shield, finding that a government official is entitled to qualified immunity unless all

reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense."). In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff asserted a violation of a constitutional right at all—prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. However, if the court finds that the plaintiff has alleged the violation of a constitutional right—a clearly established constitutional right—the court must go on to determine if the defendant official's actions could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230.

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977

F.2d 924, 928 (5th Cir. 1992) (citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) *cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990). Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

As discussed above, Giese's allegations fail to even reach the second step of the qualified immunity analysis because he has failed to demonstrate how Defendants violated a clearly established Constitutional right in their attempt to investigate the introduction of K2 onto the Ramsey Unit by an unknown correctional officer. *See* **Exhibit F** at 79:22─81:5. Therefore, Defendants are entitled to qualified immunity and Giese's claims should be dismissed.

    **iv.    Giese has no claim for compensatory damages because he has not alleged a physical injury or the commission of a sexual act.**

An inmate's suit under 42 U.S.C. § 1983 must comply with the physical injury requirements of PLRA. *See* 42 U.S.C. § 1997e(e). The PLRA provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Further, an inmate may not seek compensatory damages "for violations of federal law where no physical injury is alleged." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008).

It is the nature of the relief sought, and not the underlying substantive violation, that controls the application of the physical injury requirement contained in Section 1997e(e). *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Id.* The physical injury requirement does not apply to requests for

16

declaratory injunctive relief. *Id.* It also does not preclude claims for nominal or punitive damages. *Hutchins v. McDaniels*, 612 F.3d 193, 197–98 (5th Cir. 2007) (per curiam). When there is no physical injury and only compensatory damages are sought, the claim for damages should be dismissed. *See e.g. Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008).

In his amended complaint, Giese states that he has suffered emotional injuries and "incurred special damages for mental pain and anguish." ECF No. 24 at 8. However, the summary judgment evidence fails to support Giese's claims of any physical injury that would entitle him to seek damages of such nature.

Consequently, under the PLRA, Giese is not entitled to compensatory damages for any mental or emotional injuries claimed for which he does not also sufficiently allege a physical injury. Therefore, due to the limitations of PLRA, Giese's claims for such damages should be dismissed.

### III.
### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants Jackson, Thomas, Gallegos, and Wolfe respectfully request that this Court grant their motion for summary judgment and dismiss all claims against them with prejudice.

Respectfully Submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. McCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General
Texas State Bar No. 24101545
Southern District I.D. No. 3134903

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994
jason.bramow@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS JACKSON, THOMAS, GALLEGOS, AND WOLFE**

### NOTICE OF ELECTRONIC FILING

I, **JASON T. BRAMOW**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing, **Defendants Jackson, Thomas, Gallegos, and Wolfe's Motion for Summary Judgment**, in accordance with the Electronic Case Files System of the Southern District of Texas, on March 6, 2020.

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General

### CERTIFICATE OF SERVICE

I, **Jason T. Bramow**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and forgoing, **Defendants Jackson, Thomas, Gallegos, and Wolfe's Motion for Summary Judgment** has been served on all counsel of record via the Electronic Case Files System of the Southern District of Texas, on March 6, 2020.

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General

### CERTIFICATE OF CONFERENCE

I, **Jason T. Bramow**, Assistant Attorney General of Texas, do hereby certify that on March 5, 2020 this motion was conferenced via phone with counsel for Plaintiff, John C. LaGrappe. Mr. LaGrappe is opposed to this motion.

/s/ Jason T. Bramow
**JASON T. BRAMOW**
Assistant Attorney General