United States District Court
Southern District of Texas
**ENTERED**
May 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NEIL GIESE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00081 |
| | § | |
| JUAN JACKSON, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

In this civil rights lawsuit, Plaintiff Neil Giese, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), claims that five TDCJ officials violated his constitutional rights by retaliating against him when they conspired to plant contraband in his cell and initiate false disciplinary charges against him. Two summary judgment motions are currently pending before me: one filed by Defendant Virgil McMullen ("McMullen") and the other filed by Defendants Juan Jackson ("Jackson"), George Wolfe ("Wolfe"), James Thomas ("Thomas"), and Marcus Gallegos ("Gallegos"). *See* Dkts. 35, 36.

### BACKGROUND

From 2011 through May 28, 2018, Giese was incarcerated in TDCJ's Ramsey Unit. During the time relevant to Giese's claims in this lawsuit, McMullen served as the warden at the Ramsey Unit, Jackson was a high-ranking official at the Ramsey Unit, and Thomas, Gallegos, and Wolfe were Jackson's subordinate officers (collectively, "Defendants").

Over his years as a prisoner in the Ramsey Unit, Giese submitted multiple administrative grievances. Giese recounts tension with Jackson going back to 2014, when he wrote a grievance against Jackson for denying him craft-shop privileges. Giese also wrote multiple grievances alleging that he received inadequate medical care in the Ramsey Unit.

In December 2017, Jackson removed Giese from his laundry job and assigned him to the "field force" under Thomas, Gallegos, and Wolfe. Giese alleges that the new job violated his medical restrictions and that, later in the month, he sought emergency medical attention related to injuries from the work. He allegedly filed a grievance against Thomas, who was aware of his grievance, and claims that two officers subordinate to Thomas "shook down" his cell two times and left his property on the floor, while leaving his cellmate's property untouched. Giese also claims that, on December 21, 2017, he was restrained and placed in administrative segregation when seeking emergency medical attention.

On January 2, 2018, Giese's mother, Sherry Templin ("Templin"), faxed a letter to TDCJ officials outside the Ramsey Unit. In the letter, Templin complained that Jackson had retaliated against her son for his December 2017 grievance. On January 3, 2018, TDCJ's office of the deputy director instructed McMullen to investigate the issue and provide a response by January 10, 2018. McMullen delegated the investigation to Jackson, despite allegations that Jackson was involved in the alleged retaliation, and Jackson produced a report concluding that officials had not retaliated against Giese. McMullen then submitted the report. Giese claims that, around this time, a "visibly upset" McMullen

2

instructed him to stop filing grievances, tell his mother to stop complaining, and not complain outside the unit.  Dkt. 38-8 at 2.

Despite McMullen's pleas, Giese continued to submit grievances.  In March and April 2018, Giese wrote additional grievances complaining of inadequate medical care, storage issues, and medical restrictions.  In April 2018, Templin contacted regional authorities to report that Linda Hone ("Hone"), the unit grievance supervisor who reported to Jackson, was incorrectly telling Giese that his medical grievances were not exempt from the rule preventing inmates from filing more than one grievance every seven days.

On May 2, 2018, Giese submitted three medical grievances and one grievance against Hone.  That same day, Wolfe planted two screwdrivers in Giese's cell while conducting a "shake down," and then wrote a disciplinary case against Giese for possession of contraband.  Wolfe, Gallegos, Thomas, and Jackson all ultimately admitted to an investigator for TDCJ's Office of the Inspector General ("OIG") that they had knowledge of and participated in the plan to plant the screwdrivers and submit a false disciplinary report accusing Giese of misconduct.  Jackson specifically told the OIG investigator that he had directed Thomas to plant the evidence and write the disciplinary report, and that the officers carried out his instructions.  Jackson further stated that McMullen told him he wanted Giese gone from the unit.

Jackson claims that, when he planned the scheme against Giese, he was investigating synthetic marijuana (K2) in the unit and intended to use the false screwdriver charges against Giese to gain leverage over him and thus collect information for use in the

3

K2 investigation. Jackson testified at deposition that he and Thomas came up with a plan to plant contraband in Giese's cell.

On May 7, 2018, McMullen summoned Giese to his office. Giese states that when he got to McMullen's office, he was told to wait at a desk in the hallway. As he was waiting there, Jackson, Gallegos, and an OIG investigator entered McMullen's office. Around that time, a property officer presented Giese with a form stating, "I did possess two screw drivers in my cell," and asked him to sign to acknowledge possession. Dkt. 38-8 at 3. Giese refused. A short time later, McMullen spoke to Giese directly and urged him to stop pursuing the matter, stating that the disciplinary case against Giese had been dropped. McMullen later dismissed the disciplinary charges against Giese.

Jackson resigned from his position at the Ramsey Unit the same day he admitted his involvement in the scheme to the OIG investigator. Gallegos, Thomas, and Wolfe were all terminated once they admitted to what they had done. McMullen is no longer warden of the Ramsey Unit.

On July 3, 2018, Jackson, Thomas, Gallegos, and Wolfe each were indicted in Brazoria County for (1) "official oppression," namely "placing contraband in Neil Giese['s] possession" on May 2, 2018, when acting under color of employment as a correctional officer and (2) tampering with a government record by making a false entry, in particular, fabricating information of a cell search in a TDCJ offense report or disciplinary report. Dkt. 42-2 at 2. The indictments each charged that the two counts constituted a criminal episode. Gallegos pled guilty on December 14, 2018, to felony tampering with a government record and was placed under community supervision for four

years. The summary judgment record is silent as to the status of the criminal proceedings against Jackson, Thomas, and Wolfe.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks and citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks and citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017) (internal quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (internal quotation marks and citation omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. He must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw

reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (internal quotation marks and citation omitted).

## DISCUSSION

Giese brings conspiracy and retaliation claims under 42 U.S.C. § 1983 ("Section 1983") and sues Defendants in their individual capacities only. He seeks nominal and punitive damages.[1]

**A.  CONSPIRACY**

Giese's complaint brings a conspiracy claim under Section 1983. A plaintiff bringing a Section 1983 conspiracy claim "must not only allege facts that establish (1) the existence of a conspiracy involving state action, but also (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) (internal quotation marks omitted). At oral argument, Giese's counsel represented that the Section 1983 conspiracy claim is not a stand-alone claim, but rather supports his retaliation claim.[2] Therefore, to the extent his complaint alleges an independent claim under Section 1983, the claim is dismissed.

---

[1] Compensatory damages are not available in prisoner civil-rights lawsuits absent evidence of a physical injury or sexual act. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."). A prisoner may, however, recover nominal or punitive damages without a showing of physical injury. *See Stauffer v. Gearhart*, 741 F.3d 574, 583 n.7 (5th Cir. 2014). Although the First Amended Complaint asserts that Giese is entitled to compensatory damages, Giese clarified at oral argument that he is, in fact, not seeking compensatory damages in this lawsuit.

[2] Conspiracy under Section 1983 is a "legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act," rather than a

6

To the extent Giese relies on his conspiracy allegations to satisfy the elements of his retaliation claim, I need not address the issue in this opinion. For the reasons below, I find that fact questions preclude summary judgment on retaliation without reliance on Giese's conspiracy allegations. I also need not address the intracorporate conspiracy doctrine, which Defendants invoke as a shield to liability. If Giese pursues the conspiracy theory at trial as part of his retaliation claim, he will be required to submit supplemental briefing on the required elements for conspiracy and their interaction with the four elements of a retaliation claim.

**B.    RETALIATION**

A prison official "may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). To state a valid claim for retaliation, a prisoner must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *See Baughman v. Hickman*, 935 F.3d 302, 312 (5th Cir. 2019).

**1.    First Element: Specific Constitutional Right**

Giese has sufficiently alleged the violation of a specific constitutional right, in particular, his First Amendment right to complain through the prison grievance system without retaliation for his complaints. *See id* ("The First Amendment protects a detainee

---

freestanding claim. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (quotation marks and citation omitted), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992). *See also Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (explaining that conspiracy serves to impose liability on all defendants without regard to who committed the particular act).

from retaliation for filing grievances against prison officials."). Giese exercised his First Amendment right multiple times, including in December 2017, when he filed an administrative grievance complaining about his job change. In January 2018, Templin highlighted Giese's administrative grievances and brought them to the attention of TDCJ officials outside the unit, prompting officials to instruct McMullen to investigate. Giese continued to file grievances in March, April, and May 2018. Defendants are, thus, not entitled to summary judgment on this element.

Although Giese has sufficiently alleged a violation of a First Amendment right, he has not demonstrated a genuine issue of material fact as to his exercise of a due process right that is relevant to his retaliation claim. Giese argues that his due process rights under the Fifth Amendment and 14th Amendment were violated when Defendants planted evidence against him and initiated a disciplinary case. However, he cites no authority that supports this theory. The Fifth Amendment is not applicable because it applies only to the actions of the federal government, and not to the actions of state actors as in the present case. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Under the 14th Amendment, a state inmate has limited due-process protections in the prison grievance system, *see Gieger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005), but Giese does not claim in this lawsuit that his due-process rights were violated during the administrative grievance process. Rather, Giese's allegations of evidence-planting and a false disciplinary case are relevant to the third element of his retaliation claim, where Giese cites them as Defendants' adverse acts against him. Because Giese has not shown that he exercised a due process

8

right that caused Defendants to retaliate against him, as the first element requires, he may proceed only with his claim based on the exercise of his First Amendment right.

### 2. Second Element: Intent

The second element requires Giese to demonstrate that Defendants intended to retaliate against him for exercising his First Amendment right. To show intent, the inmate must allege more than his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Giese points to the chronology of events as evidence of Defendants' intent, as well as Defendants' statements in the OIG report and elsewhere.[3]

Defendants argue that they were only generally aware that Giese was filing grievances and, therefore, could not have intended to retaliate against him. However, the summary judgment record contains evidence that McMullen and Jackson were aware of Giese's grievances against Jackson and wanted to act against him. In January 2018, after Templin wrote letters of complaint about Jackson's alleged retaliation for Giese's December grievance, TDCJ officials outside of the unit instructed McMullen to investigate, and McMullen assigned the investigation to Jackson. Giese alleges that McMullen was

---

[3] Defendants point out that Giese did not file grievances against each individual defendant. However, the legal test does not require Giese to demonstrate that a defendant acted in retaliation for a grievance in which he or she was named. Rather, the legal test requires Giese to show that Defendants intended to retaliate against him for exercising a constitutional right. *See Baughman*, 935 F.3d at 312; *Cross v. Dretke*, 241 F. App'x 203, 205 (5th Cir. 2007) (The fact that the defendant "was not named in a prior civil action or grievance is not dispositive of whether he had retaliatory intent.").

upset and told him to stop filing grievances.[4] Additionally, Jackson admitted that he instructed the other officers to plant screwdrivers in Giese's cell and stated that McMullen wanted Giese out of the unit. Giese, therefore, has demonstrated a genuine issue of material fact as to McMullen's and Jackson's awareness of his past grievances and their intent to retaliate against him for filing them.

As for Thomas, Gallegos, and Wolfe, who supervised Giese's work after Jackson transferred Giese to the field force on December 14, 2017, Giese's affidavit states that all three officers "were aware of [his] grievances because they discussed them with [him]." Dkt. 38-8 at 1. He also alleges that Thomas read the grievance he filed about the field force work violating his medical restrictions and that, immediately after he filed the December grievance, two officers subordinate to Thomas shook down his cell and left his property strewn across the floor, while the other inmates' property remained untouched. Additionally, the OIG report contains statements from Thomas, Gallegos, and Wolfe indicating that they followed Jackson's orders to plant evidence and write a false disciplinary case despite their awareness that the orders were improper. *See* Dkt. 35-3 at 24–25 (Thomas stated to OIG that he thought Jackson ordered contraband planted in Giese's cell to give him leverage over Giese); *id.* at 25 (Gallegos stated to OIG that Jackson instructed him to write a case against Giese and that he knew the requested actions were illegal but feared retaliation from Jackson); *id.* at 26 (Wolfe stated to OIG that he did as he

---

[4] Defendants object to some of McMullen's statements in Giese's affidavit as hearsay. Because the statements cited above are offered against McMullen, a party opponent, they are not hearsay. *See* FED. R. EVID. 801(d)(2)(A); *U.S. v. Ayelotan*, 917 F.3d 394, 402–03 n.25 (5th Cir. 2019); *White v. Fox*, 470 F. App'x 214, 222 (5th Cir. 2012).

10

was instructed and wrote the case against Giese but did not think it was right). This evidence is sufficient to demonstrate a genuine issue of material fact on the second element as to Thomas, Gallegos, and Wolfe.

Defendants additionally argue that they lacked intent to retaliate against Giese because, when they planted evidence on Giese and initiated a case against him, they were implementing Jackson's plan to investigate K2 on the unit. Jackson testified at deposition that he ran an investigation to learn which staff person was permitting introduction of K2 to the Ramsey Unit, and that he had a list of nine or ten inmates, including Giese, that he suspected. Defendants maintain that Jackson intended to use the false disciplinary case against Giese to gain leverage over him and collect information about K2 and that, although Jackson's plan was misguided, it was not retaliatory. *See* Dkt. 35-12 at 34–35 (Jackson ordered the disciplinary case to be drafted against Giese, and the case "wasn't supposed to be submitted," but things "went awry."). Giese argues that the K2 rationale is implausible and points to Jackson's testimony that he never questioned Giese about the K2 investigation, never ordered contraband planted against any inmate other than Giese, and did not disclose this intent to the other Defendants who carried out his instructions. Although Defendants may pursue this argument at trial, the record currently reflects genuine issues of material fact about the K2 investigation.

  **3. Third Element: Adverse Act**

The third element requires Giese to show a retaliatory adverse act. "The First Amendment prohibits . . . adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir.

2017) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). A plaintiff must show that the defendant's actions caused an injury "that would chill a person of ordinary firmness from continuing to engage in that activity." *Keenan*, 290 F.3d at 258. Therefore, a *de minimis* act that would not deter the "ordinary person" cannot satisfy this element. *Morris*, 449 F.3d at 686. As *Keenan* noted, "some retaliatory actions—even if they actually have the effect of chilling the plaintiff's speech—are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. However, because "there is no justification for harassing people for exercising their constitutional rights," the "effect on freedom of speech . . . need not be great in order to be actionable." *McLin*, 866 F.3d at 697 (internal quotation marks and citation omitted). The Fifth Circuit has stated that the *de minimis* threshold is "intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Morris*, 449 F.3d at 686.

In this lawsuit, Giese relies on two adverse acts: the planting of screwdrivers in his cell and the initiation of the false disciplinary case against him.[5] Defendants argue that these adverse acts are insufficient.

Defendants first argue that Giese was not harmed by their actions because the case against him was dropped before Giese suffered any disciplinary consequences. However, the Fifth Circuit has acknowledged that initiation of a disciplinary case may itself be sufficient. *See Walker v. Savers*, 658 F. App'x 720, 728 (5th Cir. 2016) (noting that

---

[5] At oral argument, Giese abandoned his reliance on either his transfer to the Stringfellow Unit or his loss of educational opportunities as adverse acts for purposes of the third element.

initiation of cases "may have itself constituted sufficient acts of retaliation"). The Fifth Circuit also has recognized that, in certain circumstances, intimidation can suffice as an adverse action. *See Keenan*, 290 F.3d at 259 ("Decisions of this and other circuits have found that various concrete intimidating tactics would have deterred ordinary persons from criticizing government officials."). In this case, Defendants planted evidence against Giese, which was an illegal act, and initiated a false disciplinary case, which threatened Giese with significant disciplinary consequences for possession of contraband. Giese states in his affidavit that he feared that, as a result of the case against him, he would be placed in administrative segregation and would become ineligible for parole. As a result, I conclude that Giese has shown a genuine issue of material fact as to whether an ordinary person would have been intimidated or otherwise harmed by Defendants' actions against him.

Second, Defendants argue that, because Giese continued to file grievances despite the alleged coercion, his First Amendment activity was not actually "chilled" and he cannot show harm. They urge the Court to apply a subjective standard, citing to *McLin*'s holding that the plaintiff's "allegation of 'great personal damage'" was insufficient to show an adverse act because it failed to "demonstrate that he reduced or changed his exercise of free speech in any way." *McLin*, 866 F.3d at 697. However, the controlling authorities clearly state that an "ordinary person" standard applies. *Morris*, 449 F.3d at 686. *See also Keenan*, 290 F.3d at 259 ("The question, to repeat, is whether a person of ordinary firmness would have been deterred by these ominous events from continuing to criticize the constable"). Moreover, the *McLin* court explicitly stated that the required showing of an

13

actual injury "'does not necessarily mean that plaintiffs must cease criticizing the government officials altogether in order to have a claim for retaliation.'" *McLin*, 866 F.3d at 697 (quoting *Keenan*, 290 F.3d at 260).[6] Giese's continued grievances after the contraband was planted in his cell therefore do not warrant summary judgment in Defendants' favor.

Giese has presented evidence that Defendants placed contraband in his cell and filed a false case that threatened consequences including ineligibility for parole. If proved at trial, these "intimidating tactics" were "sufficiently intimidating to chill the speech of a person of ordinary firmness." *Keenan*, 290 F.3d at 259. *See also Walker*, 658 F. App'x at 728. Therefore, at this stage of the litigation, Giese has demonstrated a fact question as to a retaliatory adverse act.

### 4. Fourth Element: Causation

The fourth element requires Giese to show "but-for" cause, meaning that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). *See also Woods*, 60 F.3d at 1166. Temporal proximity can provide evidence of causation. *See Bibbs v Early*, 541 F.3d 267, 273–74 (5th Cir. 2008) (holding that a plaintiff who provided evidence of retaliatory

---

[6] Additionally, *McLin* is distinguishable on its facts. When holding that the plaintiff's allegation of "great personal damage" was insufficient to show an adverse act, the *McLin* court noted that the plaintiff made only conclusory or speculative allegations that he was chilled. *McLin*, 866 F.3d at 697. By contrast, Giese points to the screwdrivers planted against him and the false disciplinary case. Moreover, the *McLin* plaintiff was an "anonymous commenter," whereas Giese has presented evidence that he and his grievances were known to Defendants. *Id.*

acts one month after his grievance had provided adequate summary judgment evidence of a chronology from which causation could be inferred).

Defendants apparently argue that they only knew of Giese's grievances after the May 2 incident, thus defeating but-for causation. Giese disputes this and points to evidence that McMullen and Jackson were aware of Giese's grievance history because they had responded to TDCJ's instruction in January 2018 for McMullen to investigate and respond to Templin's complaints about Jackson. He also states in his affidavit that Thomas, Gallegos, and Wolfe were aware of his grievances. Moreover, the record contains evidence that McMullen told Jackson that he wanted Giese off the unit, that Jackson instructed Thomas to plant contraband in Giese's cell, and that Thomas, Wolfe, and Gallegos carried out the instructions despite knowing their actions were improper. Giese, therefore, has demonstrated a genuine issue of material fact that, but for Defendants' retaliatory intent, the scheme to plant contraband in his cell and bring charges against him would not have occurred.

\*\*\*

Because Defendants have not met their summary judgment burden to show the absence of a genuine issue of material fact as to any of the four retaliation elements, summary judgment is denied on Giese's retaliation claim.

C. **QUALIFIED IMMUNITY**

Defendants also seek summary judgment based on qualified immunity. Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court

must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal quotation marks and citation omitted).

As held above, Giese has alleged the violation of his First Amendment rights, which is sufficient to satisfy the first prong. As for the second prong, Defendants' counsel clarified at oral argument that Jackson, Gallegos, Thomas, and Wolfe do not argue, at this stage of the proceedings, that summary judgment is appropriate on the issue of objective reasonableness. Summary judgment based on qualified immunity, therefore, is denied for these Defendants.

McMullen argues that he is entitled to qualified immunity because he was not personally involved in the actions taken against Giese, and his actions were thus not objectively unreasonable. However, Giese has demonstrated a genuine issue of material fact as to McMullen's personal involvement, including issues as to whether McMullen directed Jackson to get Giese out of the unit, whether McMullen was aware of Giese's grievances, whether McMullen (through subordinates) pressured Giese to sign a form falsely claiming possession of the screwdrivers, and whether McMullen told Giese to stop

16

filing grievances. As a result, McMullen's request for summary judgment based on qualified immunity is denied.

## CONCLUSION

Giese has demonstrated a genuine issue of material fact on all four elements of his retaliation claim. I, therefore, **RECOMMEND** that McMullen's Motion for Summary Judgment (Dkt. 35) and Jackson, Wolfe, Thomas, and Gallegos' Motion for Summary Judgment (Dkt. 36) be **DENIED** as far as the retaliation claim is concerned. I further **RECOMMEND** that Giese's claim for compensatory damages and any independent conspiracy claim be **DISMISSED** per Giese's agreement at the summary judgment hearing.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 27th day of May, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

17